**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

FILED
John E. Triplett, Acting Clerk
United States District Court

By casbell at 11:19 am, Sep 03, 2020

KATHERINE ELAINE BLAKE,

        Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social
Security,

        Defendant.

CIVIL ACTION NO.: 2:19-cv-22

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" of "ALJ Furcolo") to deny her claims for period of disability and disability insurance benefits and supplementary security income. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 13 at 25. Defendant asserts the Commissioner's decision should be affirmed. Doc. 14 at 21. For the reasons that follow, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

On May 11, 2015, Plaintiff filed an application for disability insurance benefits and supplemental security insurance, alleging an onset date of February 26, 2013 based on spine disorder, obesity, hypertension, dental caries, ankle sprain, asthma, sleep apnea, anxiety disorder, and affective disorder. Doc. 11-2 at 13, 16–17 (R. 12, 15–16); Doc. 11-5 at 2–16 (R. 231–45). These claims were denied initially and upon reconsideration. Doc. 11-2 at 13 (R. 12). After her

claims were initially denied and denied upon reconsideration, Plaintiff filed a timely request for a hearing.  Id.  On February 15, 2018, ALJ Furcolo conducted a video hearing, at which Plaintiff appeared and testified from Brunswick, Georgia.  Id.  Kim E. Bennett, a vocational expert, appeared at the hearing and testified.  Id.  On May 1, 2018, ALJ Furcolo issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act.  Id. at 26–27 (R. 25–26).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2–4 (R. 1–3).

Plaintiff, born on June 5, 1965, was 52 years old when ALJ Furcolo issued his final decision.  Id. at 25 (R. 24).  Plaintiff has a high school education and is able to communicate in English.  Id.

## DISCUSSION

### I.    The Administrative Law Judge's Initial Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education,

and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the AJL followed the sequential process to determine that Plaintiff did not engage in substantial gainful activity since February 26, 2013, her application date.  Doc. 11-2 at 15 (R. 14).  At step two, ALJ Furcolo determined Plaintiff had spine disorder, a condition considered "severe" under the Regulations, because "it causes a more than minimal limitation" on Plaintiff's ability to engage in basic work-related activities.  Id. at 15–16 (R. 14–15).  The ALJ also determined Plaintiff had obesity and hypertension but found these conditions were "non-severe" under the regulations.  Id. at 16 (R. 15).  However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id. at 18 (R. 17).  The ALJ found Plaintiff had the residual functional capacity to perform light work, except she can frequently climb stairs; balance, stoop, kneel, and crouch; she should never climb ladders; she can occasionally crawl; she can frequently reach overhead bilaterally; and she should avoid concentrated exposure to hazards.  Id. at 19 (R. 18).  At the next step, the ALJ determined Plaintiff was unable to perform her past relevant work.  Id. at 25 (R. 24).  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of cashier II, ticket seller, and small products assembler I, all of which are jobs at the light, unskilled exertional level and which exist in significant numbers in the national economy.  Id. at 26 (R. 25).

## II.    Issues Presented

Plaintiff contends the ALJ erred in the following ways: (1) failing to properly consider the opinions of Drs. Nishi Agarwal and William Choisser; (2) improperly considering the testimony of third-parties; (3) inconsistently applying Plaintiff's subjective complaints to the

record as a whole, and (4) improperly relying on Plaintiff's purported inconsistent activities of daily living.  Doc. 13 at 4–25.

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  <u>Id.</u>

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  <u>Dyer</u>, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  <u>Cornelius</u>, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply

correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    Whether ALJ Furcolo Properly Weighed the Opinions of Dr. Agarwal and Dr. Choisser**

Two consultative doctors, Dr. Nishi Agarwal and Dr. William Choisser, examined Plaintiff.  See Docs. 11-16, 11-18 (R. 992, 1005, 1104).  Dr. Agarwal examined Plaintiff two times, in September and then in November 2015.  Doc. 11-16 (R. 993).  Dr. Choisser examined Plaintiff in December 2017.  Doc. 11-18 (R. 1108).  The ALJ assigned some weight to Dr. Agarwal's opinion and little weight to Dr. Choisser's opinion, finding each doctor's opinion not consistent with his own examination findings and not entirely consistent with the evidence of record as a whole.  Doc. 11-2 at 24 (R. 23).

Plaintiff contends the opinions of Dr. Agarwal and Dr. Choisser contain greater limitations than those the ALJ determined; specifically, each opinion shows Plaintiff has a sedentary residual functional capacity, which, given Plaintiff's age, establishes she is disabled as a matter of law.  Id.  Plaintiff asserts the ALJ erred by failing to provide sufficient reasons for the weight given to each consultative examiner's opinion.  Doc. 13 at 4–5 (citing 20 C.F.R. § 404.1527).

Dr. Agarwal and Dr. Choisser examined Plaintiff but were not Plaintiff's treating physicians, doc. 11-2 at 24 (R. 23); doc. 13 at 16, and, therefore, their medical opinions are not entitled to substantial or considerable weight.  Battles v. Comm'r, Soc. Sec. Admin., 749 F. App'x 920, 923 (11th Cir. 2018).  However, the opinions of examining physicians are generally

given more weight than non-examining physicians unless "good cause" is shown.[1]  20 C.F.R.

§ 404.1527(d); Poellnitz v. Astrue, 349 F. App'x 500, 502 (11th Cir. 2009).  Good cause exists to

discredit a physician's testimony when it is contrary to or unsupported by the evidence of record

or it is inconsistent with the physician's own medical records.  Poellnitz, 349 F. App'x at 502

(citing Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004)); see also Winschel v.

Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (finding good cause exists to

discount a treating physician's opinion when it is not bolstered by the evidence, supported a

contrary finding, or the treating physician's opinion was conclusory or inconsistent with the

doctor's own medical records).

Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or

examining physician controlling weight and those reasons are supported by substantial evidence,

there is no reversible error.  Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  Put

differently, to properly discredit a treating or examining physician's opinion, the ALJ must

articulate specific reasons for doing so, and those reasons must be supported by substantial

evidence.  Poellnitz, 349 F. App'x at 502; see also O'Bier v. Comm'r of Soc. Sec. Admin., 338

F. App'x 796, 798 (11th Cir. 2009) ("The ALJ must state with particularity the weight given the

different medical opinions and the reasons therefor.") (citing Sharfarz v. Bowen, 825 F.2d 278,

279 (11th Cir. 1987)).  Indeed, an ALJ may entirely discredit an examining physician's opinion,

but he or she must explain themselves accordingly.  Turner v. Colvin, No. 1:12-cv-2220, 2013

WL 5411685, at *5 (N.D. Ala. Sept. 26, 2013) (citing Syrock v. Heckler, 764 F.2d 834, 835

(11th Cir. 1985)).

---

[1]      Notably, "[t]he opinions of non-examining, reviewing physicians, when contrary to the opinions
of the examining physicians, are entitled to little weight."  Fleming v. Comm'r Soc. Sec. Admin., 550 F.
App'x 738, 739 (11th Cir. 2013).

Where the record contains incompatible medical opinions relating to a claimant's allegedly disabling conditions, then the ALJ's obligation to specify the weight given to such differing proof becomes more important.  Hayes v. Colvin, No. 4:12-cv-809, 2013 WL 4804222, at *8 (N.D. Ala. Sept. 6, 2013) (citing Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  The ALJ's duty does not end at merely assigning weight to conflicting opinions.  If the ALJ finds an examining physician's opinion is inconsistent with the record as a whole, he must "explicitly set forth his rationale for doing so"; the "failure to explain how [an examining physician's] opinion [is] inconsistent with the medical evidence renders review impossible and remand is required."  Paltan v. Comm'r of Soc. Sec., No. 6:07-cv-932, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) (internal quotation omitted) (citing Sharfarz, 825 F.2d 278).  Similarly, an ALJ lacks good cause to reject an opinion if he merely isolates certain portions of a medical opinion without taking them in context.[2]  See Fleming v. Comm'r, Soc. Sec. Admin., 550 F. App'x 738, 740 (11th Cir. 2013) (citing Sharfarz, 825 F.2d at 280).  "While an ALJ is not required to summarize the entire record in his or her decision to support his or her findings, a physician's opinion regarding [p]laintiff's limitations cannot be discredited by simply citing to partial references to the physician's notes, which taken in isolation and out of context, contradict the overall opinion of the same physician."  Sherwood v. Berryhill, No. 8:16-cv-2762, 2018 WL 1341743, at *5 (M.D. Fla. Feb.

---

[2]      In Sharfarz, a treating doctor opined the claimant was "totally incapable" of substantial gainful employment based on "generalized severe osteoarthritis with pain and limitation of motion in multiple joints."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  Nevertheless, the ALJ rejected the doctor's opinion based on a medical report from one specific day where the doctor reported the claimant was "significantly better," had decreased pain, a paraspinal muscle spasm had resolved, and the doctor instructed the claimant to use Motrin and return on an as needed basis.  Id.  The Eleventh Circuit Court of Appeals held this was not good cause to discount the doctor's opinion because the "significantly better" statement and accompanying notes referred to the claimant's condition on the preceding visit, when the claimant had exacerbated pain and could not walk without assistance, and the doctor opined seven months after that visit that the claimant was still incapable of working.  Id.

27, 2018) (internal citation omitted) (citing <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210–11 (11th Cir. 2005); <u>Fleming</u>, 550 F. App'x at 740).

The ALJ did identify the weight he gave to the medical opinions of Dr. Agarwal and Dr. Choisser and provided reasons for the weight assigned.  However, the Court finds the ALJ's reasons do not provide good cause for assigning some weight to Dr. Agarwal's opinion and little weight to Dr. Choisser's opinion.

In his decision, the ALJ referenced Dr. Agarwal's medical opinion, noting that:

> Dr. Agarwal opined the [Plaintiff] would have trouble with activities like pushing, pulling, grasping, and fingering at times to even carry out activities of daily living.  He further opined that [Plaintiff] would have trouble at times to feed herself, take care of personal hygiene, use a computer keyboard, button clothes, and tie her shoelaces.  [Dr. Agarwal] opined that [Plaintiff] should be able to sit, stand, and walk for 1 to 3 hours, but she should avoid bending, kneeling, crawling, stooping, reaching, handling, grasping, climbing stairs, carrying, pushing, or pulling.

Doc. 11-2 at 24 (R. 23) (citing Doc. 11-16 at 5 (R. 995)).  The ALJ granted Dr. Agarwal's opinion "some weight," because:

> [Dr. Agarwal's] opinion is not entirely consistent with the evidence of the record, including [Dr. Agarwal's] own examination findings.  Despite [Plaintiff's] impairments, she did not use an assistive device.  Her range of motion was within normal limits. She had a normal gait and station. She could get on and off the examination table.  Her motor strength was 5/5 and her grip strength was normal.

<u>Id.</u>  The ALJ does not explain how Dr. Agarwal's opinion is "not entirely consistent with the evidence of the record," other than pointing to a sample of Dr. Agarwal's September 2015 examination notes.  <u>Id.</u>  Indeed, the ALJ seems to be saying Dr. Agarwal's opinion that Plaintiff "should be able to sit, stand, and walk for 1 to 3 hours, but she should avoid bending, kneeling, crawling, stooping, reaching, handling, grasping, climbing stairs, carrying, pushing, or pulling" is inconsistent with his examination findings of a normal range of motion, normal gait, normal grip strength, and full motor strength.

The inconsistency between the cited opinions and findings is impossible to discern from the ALJ's terse treatment.  For example, it is impossible to tell how Dr. Agarwal's opinion about Plaintiff's sitting limitations is inconsistent with findings about range of motion, gait, and strength.  Moreover, the variability of the evidence concerning some of these symptoms highlights the need for clarity in the ALJ's explanation of the weight given to the medical opinions.  Consider, for example, Plaintiff's range of motion.  As evidence that Dr. Agarwal's opinion conflicts with the record, the ALJ refers to Dr. Agarwal's finding that Plaintiff has a normal range of motion.[3]  But the record shows Plaintiff's range of motion fluctuates or there is no agreement as her range of motion.  In a November 2014 examination, Dr. Emmanuel Gage noted Plaintiff had a "limited range of motion."  Doc. 11-2 at 21 (R. 20) (citing Doc. 11-8 at 58 (R. 453)).  A January 2015 consultative examination by Dr. Usifo Sunday also shows Plaintiff had a limited range of motion.  Doc. 11-8 at 87–88 (R. 483–84)).  An August 2015 examination by Dr. Sinnathurai Vasantha-Kumar found Plaintiff had "a normal range of motion."  Doc. 11-17 at 26 (R. 1035)).  As mentioned, the September 2015 consultative examination of Dr. Agarwal

---

[3]       Whether Dr. Agarwal, in actuality, found Plaintiff had a "normal" range of motion is not clear.  In the same paragraph of his exam notes where Dr. Agarwal notes "[a]ll range of motion was within normal limits," he writes "[c]omplete range of movement is included in the narrative."  Doc. 11-16 at 5 (R. 995).  Later in the medical record, Dr. Agarwal completed an "All Systems Form," which details his examination findings of Plaintiff's range of motion in her neck, back, legs, shoulders, elbows, forearms, wrists, hips, knees, ankles, and feet.  Id. at 7–8 (R. 997–98).  On this form, each of these 11 areas is broken down further into 38 specific measures.  Id.  The top of the form instructs the examiner to place an "N" where a patient's active range of motion is "normal."  Id.  For each measure, the form indicates what is considered the "normal" range of motion.  Id.  On this form, 24 of 38 measurements appear to be below the specified "normal" range of motion, indicating Plaintiff has a below normal range of motion, specifically in her neck, back, hips, and knees.  Id.  On its face, this examination data appears at odds with Dr. Agarwal's conclusion that "all" of Plaintiff's range of motion was "normal."  Id.  Plaintiff attributes this inconsistency to a scrivener's error on the part of Dr. Agarwal.  Doc. 13 at 15.  Defendant does not specifically address this inconsistency.  It appears that Dr. Agarwal's opinions on Plaintiff's range of motion are inconsistent with his own examination findings.  However, in his decision, the ALJ references this medical opinion to show Dr. Agarwal's examination findings are inconsistent with his opinions on Plaintiff's functional limitations, not that Dr. Agarwal's range of motion opinion is inconsistent with its own data.  That said, due to a lack of an explanation, it is impossible for the Court to determine the ALJ's rationale for citing Dr. Agarwal's range of motion opinion.

found "[Plaintiff's] range of motion was within normal limits."  Doc. 11-16 at 5 (R. 995)).  The May 2016 examination by Dr. Vasantha-Kumar also found Plaintiff had a "normal range of motion."  Doc. 11-18 at 7 (R. 1096)).  Finally, the December 2017 examination by Dr. Choisser found "[Plaintiff's] cervical range of motion was greatly reduced.  Flexion and rotation were limited to 20 degrees and extension was limited to 10 degrees.  [Plaintiff's] hip flexion was limited to 80 degrees because of her back pain."  Doc. 11-18 at 16 (R. 1105)).  Thus, three examinations, including Dr. Agarwal's, found Plaintiff had a normal range of motion, and three examinations found limits to Plaintiff's range of motion.

Additionally, the ALJ's statement that Dr. Agarwal's opinion is not consistent with his own findings is similarly unavailing.  The ALJ notes, "Despite [Plaintiff's] impairments, she did not use an assistive device.  Her range of motion was within normal limits.  She had a normal gait and station.  She could get on and off the examination table.  Her motor strength was 5/5 and her grip strength was normal."  Doc. 11-2 at 24 (R. 23).  But the ALJ omits relevant portions of Dr. Agarwal's opinion.  For instance, the full text description of Plaintiff's movement, gait, and station reads, "No assistive device.  Patient walks slowly, painful."  Doc. 11-16 at 9 (R. 999).  Furthermore, regarding range of motion, Dr. Agarwal wrote, "Complete range of motion is in the form," referencing an All Systems Form evaluating in detail Plaintiff's range of motion.  Doc. 11-16 at 5–8 (R. 995–98).  Based on the All Systems Form, it is clear Plaintiff's range of motion is not "normal."  See supra n.3.  Of the remaining "inconsistencies" cited by the ALJ (i.e., Plaintiff's motor and grip strength and her ability to get on and off an examination table), the Court does not find that these "inconsistencies" provide good cause to give only some weight to Dr. Agarwal's examining opinion concerning Plaintiff's ability to stand, walk, bend, kneel, crawl, stoop, and need to avoid reaching, handling, and grasping.

The Court also finds the ALJ takes a similar selective approach to Dr. Choisser's opinion. Dr. Choisser opined Plaintiff's pain would constantly interfere with her attention and concentration and that she could perform a limited range of sedentary work with certain manipulative limitations.  Doc. 11-18 at 17–19 (R. 1106–08).  Dr. Choisser also opined Plaintiff would be absent from work for more than four days per month and would need to lie down four hours per day.  Id.  As with Dr. Agarwal, the ALJ discredits Dr. Choisser's opinion based on its inconsistency with the evidence of record as a whole, but again, fails to articulate other inconsistent evidence, other than some of Dr. Choisser's own findings.  Of those findings, the ALJ highlights Dr. Choisser's observation that Plaintiff "was able to walk a few steps heel-to-toe," "[h]er neck was normal to palpation," "[h]er Romberg sign was negative," and she "frequently presented with normal gait upon examination."[4]  Doc. 11-2 at 24 (R. 23).

It is important to view Dr. Choisser's statements in their entire context.  For example, Dr. Choisser noted, "Her neck is normal to palpation with no enlargement of her thyroid or lymph nodes."  Doc. 11-18 at 16 (R. 1105).  Regarding her ability to walk, Dr. Choisser wrote, "Her gait is slow but she is able to walk a few steps heel to toe."  Id.  The ALJ cannot discredit Dr. Choisser's opinion merely by citing to partial references to the physician's notes, which taken in isolation and out of context, contradict the overall opinion of the same physician."  Sherwood, 2018 WL 1341743, at *5.  Additionally, the ALJ's reasoning for assigning reduced weight to Dr. Choisser's opinion based on the purported inconsistencies between his opinions and findings is impossible to discern from the ALJ's terse treatment.  For example, it is impossible to tell why

---

[4]       A negative Romberg's sign indicates no "loss of proprioceptive control in which increased unsteadiness occurs when standing with the eyes closed compared with standing with the eyes open," a positive Romberg's sign suggests "disease of the balancing mechanism in the inner ear or of its nerve connections or a loss of sensory information about the position of the legs . . . usually from disease of the sensory tracts in the spinal cord."  http://medical-dictionary.thefreedictionary.com/Romberg's+sign (last visited Sept. 3, 2020).

the ALJ concluded Dr. Choisser's opinion that Plaintiff would miss work more than four days per month is somehow "inconsistent" with his findings regarding Plaintiff's ability to take a few steps heel-to-toe, normal neck palpation, a negative Romberg's sign, and normal gait.

The ALJ's conclusory statement that Dr. Agarwal's opinion and Dr. Choisser's opinion were not consistent with the medical evidence, absent further explanation or citation to specific evidence, and in light of these disparities in the record, impedes the Court's review of his decision and obscures his rationale.  The Court cannot determine whether the ALJ properly discredited Dr. Agarwal's and Dr. Choisser's opinions if the ALJ does not better explain how the opinions are inconsistent with the record by citing to substantial medical evidence in the record. See, e.g., Stroman v. Astrue, 08-22881-CV, 2009 WL 3669640, at *3 (S.D. Fla. Nov. 4, 2009) (holding ALJ failed to clearly articulate the reasons for rejecting treating physician's opinion when ALJ noted "opinion was contrary to other medical evidence, but did not specify what that evidence was," and noted "opinion was inconsistent with [treating physician's] treatment notes but did not specify how that was the case").

To be clear, the Court takes no stance on the correctness of these doctor's opinions, and the Court is not suggesting the ALJ must, or should, grant their opinions any weight, let alone substantial weight. Dyer, 395 F.3d at 1210 ("[The court] may not decide facts anew, reweigh the evidence, or substitute [the court's] judgment for that of the Commissioner.").  Rather, if the ALJ discredits the opinions of these physicians, he must provide an adequate explanation of his reasons for doing so.  Without such guidance from the ALJ, the court is unable to exercise meaningful judicial review.

Accordingly, I **RECOMMEND** the Court **REMAND** the case to the Commissioner for further consideration. Given my recommendation, the Court declines to address Plaintiff's remaining enumerations of error. Doc. 13 at 4–25.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). This remand under sentence four would terminate this Court's jurisdiction over the matter. Therefore, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. See 28 U.S.C. § 636(b); Federal Rule of Civil Procedure 72(b)(2). Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections. The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of September, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA